UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
FRANCES C. ESPOSITO,                                                    CV 16-4833
                                                                        (ADS)(ARL)
                Plaintiff,

            -against-

SUFFOLK COUNTY COMMUNITY COLLEGE, NANCY
GERLI, DIANE BOSCO, and JEFFREY TEMPERA,

                Defendants.
------------------------------------------------------------------------X

# DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SANCTIONS

                                                  Respectfully submitted,

                                                  DENNIS M. BROWN
                                                  Suffolk County Attorney
                                                  *Attorney for Defendants*
                                                  H. Lee Dennison Building
                                                  100 Veterans Memorial Highway
                                                  P.O. Box 6100
                                                  Hauppauge, New York 11788-0099

                                  By:    John R. Petrowski
                                            Assistant County Attorney

Dated: Hauppauge, New York
        June 29, 2018

## **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

1. Plaintiff Failed to Affirmatively Deny Her Fraudulent Conduct
   or to Plausibly Explain the Fabricated Notes Regarding Her
   Alleged Disability From Dr. Michael Campo . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

2. Plaintiff Failed to Plausibly Explain the Fabricated Notes
   Regarding Her Alleged Disability From Dr. Gary DiCanio . . . . . . . . . . . . . . . . . . 8

3. Plaintiff Failed to Plausibly Explain Her False Testimony and
   Repeated Perjuries . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**PRELIMINARY STATEMENT**

This Reply Memorandum of Law is respectfully submitted on behalf of Defendants Suffolk County Community College ("College"), Nancy Gerli, Diane Bosco and Jeffrey Tempera (collectively, the "Defendants") in further support of Defendants' motion for sanctions, including striking the Complaint and for other appropriate relief, pursuant to Rule 11, Rule 12(c) and Rule 37 of the Federal Rules of Civil Procedure, on the grounds that Plaintiff has perpetrated a fraud on the Court and spoliated evidence, which warrants the immediate dismissal of this action and the imposition of other appropriate sanctions, including costs and attorney fees.

Plaintiff's opposition papers fail to plausibly explain any of the eight (8) specific instances of fraud, spoliation and litigation misconduct that Defendants have established by clear and convincing evidence in their initial motion papers. Defendants have established that Plaintiff forged and fabricated at least two (2) medical notes from Dr. Campo, at least three (3) medical notes from Dr. DiCanio, perjured herself regarding how she was injured and the extent of her injuries, perjured herself about her involvement in the criminal defense of her former student and a key witness for her case (Siah Coffey), and perjured herself about how Nancy Gerli required her to submit notes from mental health providers after she had a miscarriage in October 2006.

Glaringly absent from her opposition papers are (i) a sworn affidavit from Plaintiff affirmatively denying that she engaged in the fraudulent conduct established by Defendants and (ii) a sworn declaration from her counsel affirming that they conducted a reasonable inquiry into Plaintiff's allegations in compliance with Rule 11.  Given the totality of the evidence and corroborated testimony regarding Plaintiff's misconduct and fraud on the Court, her efforts to tamper with witnesses, and the conspicuous absence of a sworn affidavit from her affirmatively denying such fraud and misconduct, Defendants have clearly and convincingly established that Plaintiff has perpetrated a fraud upon the Court.  See *Riley v. City of New York*, 2015 WL

1

541346 at * 11 (E.D.N.Y. 2015) (defendants proffer of evidence of plaintiff's misconduct and witness tampering, coupled with plaintiff's failure to testify or otherwise deny involvement in witness tampering, "constitute clear and convincing evidence that Plaintiff was involved…").

Plaintiff attempts to argue the merits of her case, rather than providing a plausible counter-narrative for the obviously forged and fabricated medical notes and false testimony. Plaintiff further attempts to obfuscate her fraudulent and sanctionable conduct by confusing the issues relating to her fraud with the purported merits of her underlying case. Defendants will not be baited into a merits argument in connection with the instant motion. Defendants will, however, at the appropriate time and if necessary, prove that (i) Plaintiff is not "disabled" as that term is defined under the ADA, (ii) any alleged adverse employment actions either did not occur or were based upon legitimate, non-discriminatory and non-retaliatory reasons, (iii) Defendants only learned of Plaintiff's claims of being disabled and requests for accommodation in late 2009 and (iv) Defendants provided her with all reasonable accommodations she requested from the Spring 2010 semester until the present (notwithstanding that the medical notes in support of her requests are fabricated and forged).

This Reply Brief will appropriately focus on the issues presently before the Court: Plaintiff's fraud upon the Court, her spoliation of evidence, her repeated perjuries, and her failure to affirmatively deny, or even to offer a plausible and supported explanation for, the fraudulent conduct of which she is accused and for which she must be sanctioned.

1. **Plaintiff Failed to Affirmatively Deny Her Fraudulent Conduct or to Plausibly Explain the Fabricated Notes Regarding Her Alleged Disability From Dr. Michael Campo**

Plaintiff alleges in her Complaint that she first notified the College of her purported disability and requested certain accommodations, including back-to-back classes in the same classroom, in letter from Dr. Michael Campo dated August 8, 2005, which states that she was "unable to walk from building to building" and that "same room accommodation is necessary."

2

(See **Exh. A,** Complaint, at ¶¶ 53-58; **Exh. C,** 8/8/05 Letter) (Exhibits A through Q are annexed to Defendants' initial motion papers and Exhibits R and S are annexed to the Reply Declaration of John Petrowski).  The record evidence clearly establishes that this letter is fabricated and forged and was not actually received by the College until after Plaintiff filed the forged letter with the EEOC in 2010.  (**Exh. S**, Plaintiff's submission to EEOC with forged notes).

As set forth more fully in Defendants' initial papers, the letterhead used by Plaintiff when forging the 2005 letter has an address for Dr. Campo's office of "700 Horseblock Road," an address which Dr. Campo did not use until 2010.  Moreover, the letter was not contained in his medical records, and he disavowed it at his deposition.  (**Exh. G**, Campo Tr. at pp. 7-13, 24-28).

Plaintiff argues in her brief that "the evidence fails to establish that the 8/8/05 Letter is a forgery perpetrated by Plaintiff, or even that the letter was forged at all.  Defendants' argument in this regard amount to nothing more than mere conjecture."  Pl. Mem. in Opp. at pp. 10-11. Plaintiff's incoherent ramblings about confusion surrounding the origin of this forged medical note constitute further evidence of fraud upon the Court.  See esp. Pl. Mem. in Opp. at pp. 11-12. Notwithstanding Plaintiff's desperate efforts to confuse the issues relating to her misconduct, Dr. Campo was deposed a second time on June 19, 2018, when it was again established by clear and convincing evidence that the 8/8/05 letter (as well as the 8/9/05 note discussed infra) are forgeries.  (**Exh. R**., Campo II Tr. at pp. 95-96).  In that regard, Dr. Campo testified as follows:

> Q.  I just ask to you take a look at that [8/8/05] letter.  When you went back and looked in your files, after your last deposition, was that letter contained within your files?
> A.  No, it was not.
> Q.  Okay.  And this letter is dated August 8th of 2005, and on the letterhead it has an address of 700 Horseblock Road in Farmingville.  Were you at that address at that time?
> A.  No, I was not.
> Q.  Is this your signature on the letter?
> A.  It is.

3

> Q. Okay. Do you know how this letter came about?
>
> A. Not from my office.
>
> Q. Okay. So you don't believe that this was generated from your office?
>
> A. It was not generated from my office.
>
> Q. Do you believe that you signed this letter?
>
> A. That is my signature.
>
> Q. Okay. Do you know how your signature got on this letter?
>
> A. Well, my assumption as it got on the 8/9/05 it was probably some type of created cut and paste kind of note.
>
> Q. Okay. Since your last deposition, have you had any contact with Fran Esposito?
>
> A. Me personally, no.
>
> Q. Has she tried to contact your office?
>
> A. She came in my office prior to the initial deposition with a packet of disability notes, and then asked my staff for me to speak to her, which I knew not to, and I did not.
>
> (**Exh. R**., Campo II Tr. at pp. 95-96).

Dr. Campo's sworn testimony provided at two (2) depositions, and the incorrect address on the letterhead, establish by clear and convincing evidence that the 8/8/05 note is fabricated and forged. This note was submitted to the EEOC to support her claim of disability discrimination and led to a "probable cause" determination and the instant lawsuit. (**Exh. S**).

In another fabricated note from Dr. Campo dated "8-9-05," Plaintiff obviously altered an authentic note from him dated "11-19-04" by whiting-out and adding, among other things, that she is "unable to walk from building to building" and "same room accommodation necessary." (Compare altered 8/9/05 note at **Exh. E** with authentic 11/19/04 note at **Exh. D**). Plaintiff argues in her brief that "it is far from obvious or clear that Plaintiff altered the 11/19/04 Note to create the 8/9/05 Note." Pl. Mem. in Opp. at p. 17. Once again, Plaintiff's confusing and unsupported version of the facts is directly refuted by Dr. Campo's sworn testimony at his second deposition. Under examination by Plaintiff's counsel at his second deposition, Dr. Campo testified extensively about how his 11/19/04 note was obviously altered to create the 8/9/05 forged note:

4

Q. The text starting on the third line of that section starting with the, "above patient," and beyond, especially the writing below the final line that says, "same room accommodation necessary," would you agree that those handwritings look similar?

MS. KOBOS: Objection to the form.

A. No, they do not. They look different.

Q. Are you a handwriting expert?

A. I'm not. But that's my opinion.

Q. I'm also asking if you're a handwriting expert?

A. No.

Q. Do you have any training in handwriting analysis?

A. No.

Q. So can you swear under oath that this handwriting is different than at the bottom of the page than -- sorry, at the bottom of is, "under care for my treatment starting with same room accommodation," being different than the first few lines?

MS. KOBOS: Objection to the form.

A. I can swear to my opinion. My opinion, that's different.

Q. Right. But I'm asking if you can testify absolutely that the same person did not write the same room accommodation wording?

A. I'm very confident, yes.

Q. And other than your opinion that you think the handwriting looks different, what is that based on?

A. Well, several things. One, my fax machine at this time occasionally would get particles on it, or whiteout on it and it would create a line and have to be cleaned. So you can see how that line parallel. Other disability notes, you notice it's not there. Okay. That's one.

   Secondly, you can see how when you look at the word on the third line where it's partially or totally was changed to "partially," you can see how that a little bit above it you still a little dot, so, obviously, some whiteout occurred there, and they turned an 0 to an A.

   And as you continue, you can see how walk was changed -- pardon me -- "work" was changed to "walk." Again, a little dot left over in regards to that. And there was also, if you look at the line where it says, "the patient colon," then the first line, "is totally disabled at the time." Where there was an X there, you can see how that line has all of a sudden has disappeared a little bit.

   As, obviously, somebody did that-- I'm not a handwriting expert, but it's obvious that somebody took my 11/19/04 and used it to create this note that did not exist in my file. That I -- my staff did not create. That somebody created their own letter on the 8/9/05.

Q. I see that this could have been whited out, but isn't it possible that it could have been whited out by someone in your office?

A. Impossible. Impossible.

5

Q. Why is it "impossible"?

A. Because we would write a new note.

Q. Well, do you recall specifically dictating the 11/19/04 note to whoever wrote it for you?

A. I don't specifically remember writing the note, but I signed it, that was it. And, I mean, but this note is an obvious distortion.

\*     \*     \*     \*     \*

Q. With respect to the information contained in the 8/9/05 note that she's partially disabled and unable to walk from building to building, same room accommodation being necessary, that she would need to teach in a technology equipped room, and refrain from lifting, stair climbing, or prolonged standing, do you agree that in 2005 these restrictions existed, or that these accommodations would have been beneficial for Professor Esposito?

MS. KOBOS:  Objection to form.

A. This patient was not totally disabled at this time.  So to say no lifting or stair climbing or -- you know, this wasn't discussed. I did not have any discussion with the patient in regards to this.  And I'm quite insulted actually that somebody would doctor my note.

\*     \*     \*     \*     \*

Q. Knowing that Professor Esposito suffered from herniated discs, radiculopathy at this point in time, do you now sitting here agree that not lifting would be appropriate accommodation for her condition, or an appropriate limitation for her condition?

A. Patient should be able to lift, push, or pull to some capacity, to say completely no lifting, pushing, pulling at all, that would be an extreme for somebody who is partially disabled.

\*     \*     \*     \*     \*

Q. Well, you did testify that you remember her talking about difficulty walking from building to building?

A. That the campus was large, yes.

Q. So the portion of this where it says that, "she's unable to walk from building to building, same room accommodation necessary," you recall that that was actually discussed with Professor Esposito?

A. Not that she was unable to walk building to building.  We just discussed that she had discomfort because it's a large campus.  Never stated she was unable to walk from building to building.

Q. Do you agree that, again, though sitting here today based on her condition in August of 2005, that she would benefit, from a medical perspective, from not having to walk from building to building in between her classes?

A. Not necessarily.

Q. Why not?

6

A.  Because she was partially disabled.  I never said she was unable to walk.  I never said she was unable to walk building to building.  The discussion was that long distances may aggravate her, it may – she would have discomfort because the campus was so large.

Q. Right.  So my question is:  Do you agree that based on that -- that her medical condition in that regard where she explained that walking from building to building aggravated her symptoms, that teaching consecutive classes in the same room or same building, instead of going from building to building, would help alleviate her symptoms?

A.  It wasn't discussed.  It's a speculation based on, you know, it was -- all I can answer the question is there was no discussion of her inability to walk from building to building.

Q. But there was discussion that it was difficult for her to do so?

A. She expressed -- I do recall her expressing it was a large campus, and at times she was uncomfortable walking the long distances.

\*       \*       \*       \*       \*

Q.  So based on your testimony, you are inferring that this note was forged, and by Professor Esposito, you don't have any actual proof; is that right?

A.  No.  I have proof.

MS. KOBOS:  Objection.

A.  I do have proof.  As previously stated, any reasonable person, expert or not, can see how this note was made to make that note.  And this note was not produced by my office the 8/9/05, and that's that.

(**Exh. R**., Campo II Tr. at pp. 76-87; see also pp. 11-12, 35-39, 67-68).

The record evidence clearly establishes that not only has Plaintiff altered, forged and fabricated notes from Dr. Campo, but she also tampered with his testimony and the medical records he brought with him to his first deposition.  The notes from Dr. Campo form the basis of her claims that she made requests for reasonable accommodations that went ignored or rejected by Defendants, when in fact they are fabricated and forged notes that were not submitted to the College until after she filed the forged notes with the EEOC in 2010.  (**Exh. S**).

Plaintiff argues in her brief that "Defendants' allegations regarding these doctors' notes primarily relate to merely a few notes from 2004, 2005 and 2006, but notes from these years are not pertinent to Plaintiff's claims in this action."  Pl. Mem. in Opp. at p. 7.  This attempt to justify the submission of forged and fabricated medical notes to the EEOC and Defendants is

7

absurd. The notes from 2004, 2005 and 2006 form the basis of Plaintiff's claims of disability discrimination and failure to accommodate, and were filed with the EEOC in 2010 to mislead the EEOC into finding "probable cause" regarding her claims. (**Exh. S**).

2. **Plaintiff Failed to Plausibly Explain the Fabricated Notes Regarding Her Alleged Disability From Dr. Gary DiCanio**

As set forth more fully in Defendants' initial motion papers, Plaintiff also produced several fabricated notes from Dr. Gary DiCanio. One note dated "September 2006" states "request reasonable room accommodation teaching consecutive classes no traveling between classes/buildings." (**Exh. H**, Sept. 2006 note). This note, however, was not contained in Dr. DiCanio's certified medical records. Moreover, it was inexplicably addressed to Defendant Diane Bosco, even though Professor Bosco was only a faculty member in 2006 and did not assume a supervisory role as the Assistant Chair of the Reading Department until 2011.

In another note produced by Plaintiff purported to be from Dr. DiCanio dated "9/2009," the fabricated letterhead contains the incorrect fax number "631-508-0485," which transposed the correct prefix of "580." (**Exh. I**, 9/2009 note). This note also was not contained in Dr. DiCanio's certified records, and he testified that his letterhead never contained the incorrect fax number. (**Exh. L**, DiCanio Tr. at pp. 20-21, 31-33).

Like the fabricated notes from Dr. Campo, the fabricated notes from Dr. DiCanio form the basis of Plaintiff's claims that she made requests for reasonable accommodations that Defendants ignored or rejected, when in fact they are fabricated and forged notes that were not submitted to the College until after she filed the forged notes with the EEOC in 2010. (**Exh. S**).

Plaintiff argues in her brief that the absence of the notes from Dr. DiCanio's certified medical records "is hardly clear and convincing evidence of forgery" and that "a far more reasonable explanation . . . is office error." Pl. Mem. in Opp. at pp. 7-8. Plaintiff's argument has no basis in fact or law - Plaintiff offers no explanation whatsoever as to why the September 2006

8

note would be sent to Diane Bosco, who was not a supervisor until 2011. Moreover, not only were these notes not contained in Dr. DiCanio's certified medical records, but they were not received by anyone at the College until after they were submitted to the EEOC in 2010. The form and content of these notes, along with Dr. DiCanio's sworn deposition testimony, establishes clearly and convincingly that they are forged and fabricated.

Plaintiff's reliance on *Zimmerman v. Poly Prep Country Day School*, 2012 WL 865842 (S.D.N.Y. 2012) for the proposition that an offending party may avoid sanctions by offering "equally plausible explanations" for discrepancies in testimony or evidence, is misplaced. Pl. Mem. in Opp. at pp. 6, 8-9. Firstly, the Court in *Zimmerman* did not deny the non-offending party's motion for sanctions, it reserved decision and set the matter down for an evidentiary hearing. Furthermore, Plaintiff has utterly failed to offer anything resembling an "equally plausible explanation" for the forged and fabricated medical notes. Plaintiff's unsupported and unsworn denials do not constitute a plausible counter-narrative to her fraud on the Court.

3. **Plaintiff Failed to Plausibly Explain Her False Testimony and Repeated Perjuries**

Plaintiff's desperate and confusing explanation as to why her false testimony and repeated perjuries should be tolerated by this Court is a further admission of her perpetration of a fraud upon the Court. See Pl. Mem. in Opp. at pp. 16-24. As set forth more fully in Defendants' initial motion papers, Plaintiff has repeatedly perjured herself as to the extent of her disability, among many other things. Plaintiff clearly perjured herself and testified that she was "brutally assaulted during a gang riot," rather that testifying truthfully that she was pushed during a fistfight between two students, to bolster her claims that she is disabled and in need of certain accommodations. Plaintiff also perjured herself by lying about the extent of her involvement in Siah Coffey's criminal defense to undermine Defendants' theory that she manipulated Mr. Coffey in exchange for his false testimony against Defendant Diane Bosco.

9

In her Complaint and at her deposition, Plaintiff falsely claims that as a result of a miscarriage "in or around October 2006," Nancy Gerli perceived her to have been mentally ill and required her to submit notes from mental health providers to prove she was fit for duty at the College. (**Exh. A,** Complaint at ¶¶ 66-77; see also **Exh. B,** Esposito Tr. at pp. 160, 177-183). Professor Gerli has emphatically denied such outrageous and defamatory claims. Plaintiff's false testimony has prejudiced Defendants by impeding their ability to develop the theory that the notes from mental health providers that were submitted to the EEOC (**Exh. S**) and produced by Plaintiff during discovery were actually obtained by Plaintiff for the purpose of refuting allegations by her ex-husband, John Ringold, that she was mentally ill, in the context of their contested divorce proceedings, and were not in any way ever requested by Nancy Gerli. (See **Exh. B,** Esposito Tr. at pp. 177-183; see also copies of mental health notes provided to the EEOC at **Exh. S**).

Plaintiff's efforts to offer a plausible explanation along with medical documentation of her alleged miscarriage miss the point of Defendants' argument. See Pl. Mem. in Opp. at pp. 2, 22-24. Even assuming *arguendo* the authenticity of the medical documentation provided (for the first time in opposition to the instant motion), Plaintiff falsely testified under oath that Nancy Gerli required her to submit notes from mental health providers to keep her job. Plaintiff's fraud and perjury have significantly impeded the Defendants' ability to assess her claims and to develop a defense to her allegations.

## **CONCLUSION**

Based upon the foregoing and their initial motion papers, Defendants respectfully request that this Court grant its motion for sanctions, including striking the Complaint and awarding Defendants costs and attorney fees, together with such further and other relief as the Court deems just and proper, including setting this matter down for an evidentiary hearing.

10

|  |  |
|---|---|
| Dated: Hauppauge, New York<br>June 29, 2018 | Respectfully submitted,<br>Dennis M. Brown<br>Suffolk County Attorney |
|  | By:  *John R. Petrowski*<br>John R. Petrowski<br>Assistant County Attorney<br>100 Veterans Highway<br>Hauppauge, NY  11788<br>(631) 853-4660 |

11