FILED
CLERK
3/4/2019 4:58 pm
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
FRANCES C. ESPOSITO,

                    Plaintiff,        **MEMORANDUM OF DECISION & ORDER**

       -against-                2:16-cv-04833 (ADS)(ARL)

SUFFOLK COUNTY COMMUNITY
COLLEGE, NANCY GERLI, DIANE BOSCO,
and JEFFREY TEMPERA,

                    Defendants.
----------------------------------------------------------X

**APPEARANCES:**

**Ellenoff Grossman & Schole LLP**
*Attorneys for the Plaintiff*
1345 Avenue of the Americas 11th Floor
New York, NY 10105
        By:    Amanda M. Fugazy, Esq.,
                 Valerie J Bluth, Esq.,
                 Paul P. Rooney, Esq.
                 Robert James Anderson, Esq.,

**Suffolk County Attorney's Office**
*Attorneys for the Defendants*
100 Vets Memorial Hwy
Hauppauge, NY 11788
        By:    John Richard Petrowski, Assistant County Attorney,
                 Dana Kobos, Assistant County Attorney,
                 Drew W. Schirmer, Assistant County Attorney,
                 Elaine M. Barraga, Assistant County Attorney,
                 L. Adriana Lopez, Assistant County Attorney.

**SPATT, District Judge**:

On August 30, 2016, the plaintiff Frances C. Esposito (the "Plaintiff") brought this action against the defendants Suffolk County Community College ("SCCC" or the "College"), Nancy Gerli ("Gerli"), Diane Bosco ("Bosco") and Jeffrey Tempera ("Tempera") (collectively, the "Defendants") to recover monetary and affirmative relief based upon the Defendants' alleged

violations of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* ("ADA"); Rehabilitation Act, 29 U.S.C. § 701 *et seq.* ("Rehab Act"); New York State Human Rights Law, N.Y. Executive Law § 290 *et seq.* ("NYSHRL"); and 42 U.S.C. § 1983 *et seq.* ("Section 1983"), as amended.

The Plaintiff is an adjunct professor in the College's Reading Department, where she has worked since 2003. She alleges that she and her doctors advised the College in 2005, 2006 and 2009 of her purported disability and her need to be scheduled for back-to-back classes in the same classroom, among other requests. She alleges failure to promote, failure to provide reasonable accommodation and retaliation for bringing internal complaints in December 2009 and a 2010 complaint to the Equal Employment Opportunity Commission ("EEOC"). Gerli, the Academic Chair of the Reading and College Seminar Department, Bosco, the Assistant Academic Chair of the Reading and College Seminar Department, and Tempera, the Assistant Vice President for Employee Relations, either supervised the Plaintiff or controlled the process for making accommodations to individuals with disabilities.

Presently before the Court is a motion by the Defendants, pursuant to Federal Rules of Civil Procedure ("Fed. R. Civ. P." or "Rules") 11, 12(c) and 37, for sanctions on the ground that the Plaintiff perpetrated a fraud on the Court warranting the dismissal of the action. The Defendants also request the imposition of other sanctions, including costs and attorney's fees. In essence, the Defendants argue that the Plaintiff forged all of the doctors' notes serving as the basis for her claims, and that she perjured herself by making a number of knowingly false allegations in the Complaint and her deposition.

For the following reasons, the Court refers the Defendants' motion for an evidentiary hearing regarding the specific matters detailed in this opinion and denies the remainder of the Defendants' motion.

## I. DISCUSSION

Beyond the powers expressly conferred by rule and statute, federal courts have the inherent power to sanction a party for conduct which abuses the judicial process. *Skywark v. Isaacson*, No. 96-cv-2815, 1999 WL 1489038, at *14 (S.D.N.Y. Oct. 14, 1999). Included in those powers is the authority to sanction frauds on the court, which occur when "a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by ... unfairly hampering the presentation of the opposing party's claim or defense." *McMunn v. Mem'l Sloan–Kettering Cancer Ctr.*, 191 F.Supp.2d 440, 445 (S.D.N.Y.2002) (quoting *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1118 (1st Cir.1989)); *see also Hargrove v. Riley*, No. 04-cv-4587, 2007 WL 389003, at *11 (E.D.N.Y. Jan. 31, 2007); *Shangold v. Walt Disney Co.*, No. 03-cv-9522, 2006 WL 71672, at *4 (S.D.N.Y. Jan. 12, 2006); *Intelli–Check, Inc. v. TriCom Card Techs.*, Inc., No. 03-cv-3706, 2005 WL 3533153, at *11 (E.D.N.Y. Dec. 22, 2005); *Scholastic, Inc. v. Stouffer*, 221 F.Supp.2d 425, 439 (S.D.N.Y.2002).

The essence of fraud on the court is "when a party lies to the court and his adversary intentionally, repeatedly, and about issues that are central to the truth-finding process." *McMunn*, 191 F.Supp.2d at 445. Fraud on the court, therefore, does not merely "embrace any conduct of an adverse party of which the court disapproves;" rather, it "embrace[s] only that species of fraud which does or attempts to, defile the court itself." *Kupferman v. Consol. Research & Mfg. Corp.*, 459 F.2d 1072, 1078 (2d Cir.1972) (Friendly, C.J.) (citation and internal quotation marks omitted) (discussing fraud on the court in the context of a Rule 60(b) motion).

3

Consequently, "an isolated instance of perjury, standing along, will not constitute a fraud upon the court." *McMunn*, 191 F.Supp.2d at 445; *see also Jung v. Neschis*, No. 01-cv-6993, 2009 WL 762835, at *21 (S.D.N.Y. Mar. 23, 2009); *Skywark*, 1999 WL 1489038, at *14. "Rather, fraud upon the court 'occurs where a party has acted knowingly in an attempt to hinder the fact finder's fair adjudication of the case and his adversary's defense of the action.'" *McMunn*, 191 F.Supp.2d at 445 (quoting *Skywark*, 1999 WL 1489038, at *14).

A movant claiming fraud on the court bears the burden of proving the sanctionable conduct by "clear and convincing evidence." *Passlogix, Inc. v. 2FA Tech., LLC*, 708 F. Supp. 2d 378, 393–94 (S.D.N.Y. 2010). Under this exacting standard, the Court may only find fraud upon the court based on evidence that "produce[s] in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable [the factfinder] to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." *Blair v. Inside Ed. Prods.*, 7 F. Supp. 3d 348, 358 (S.D.N.Y. 2014). In other words, the proof must be "highly probable" and "leave[] no substantial doubt." *Waran v. Christie's Inc.*, 315 F. Supp. 3d 713, 718–19 (S.D.N.Y. 2018) (quoting *Dongguk Univ. v. Yale Univ.*, 734 F.3d 113, 123 (2d Cir. 2013)).

The Defendants allege that the Plaintiff engaged in five different categories of fraudulent behavior, namely, that she: (1) fabricated notes regarding her alleged disability from Dr. Michael Campo ("Dr. Campo"); (2) fabricated notes regarding her alleged disability from Dr. Gary DiCanio ("Dr. DiCanio"); (3) falsely testified that she sustained her injuries during a riot at work that occurred while she was on leave; (4) falsely testified about her involvement in the criminal defense of Sia Coffey ("Coffey"), a former student; and (5) falsely testified that she suffered a miscarriage and was forced to submit notes from mental health providers. The Court finds that the Defendants

4

raised enough suspicion that the Plaintiff fabricated Dr. Campo and Dr. DiCanio's notes to justify holding an evidentiary hearing but have not established that the Plaintiff perjured herself by clear and convincing evidence.

## A. AS TO WHETHER THE PLAINTIFF FABRICATED DR. CAMPO'S NOTES.

The Plaintiff alleges in the Complaint that she first notified the College of her purported disability and requested certain accommodations in a note from Dr. Campo dated August 8, 2005, which states that she was "unable to walk from building to building" and that "same room accommodation is necessary." ECF 1 at ¶¶ 53–58. The Defendants allege that the Plaintiff forged this note, as well as a note dated August 9, 2005 stating, among other things, that the Plaintiff is "unable to walk from building to building" and "same room accommodation necessary."

Upon its review of these letters, the Court agrees with the Defendants that they appear to be forged. Starting with the August 8, 2005 letter, the address for Dr. Campo's office on the letterhead is "700 Horseblock Road," an address which the Plaintiff admits could not have been Dr. Campo's address because he did not move his office to that location until 2010. ECF 35-4. As for the August 9, 2005 letter, it is almost identical to an authentic note from Dr. Campo dated November 19, 2004, except it was altered by whiting-out and adding, among other things, that the Plaintiff is "unable to walk from building to building" and "same room accommodation necessary." *Compare* ECF 35-5, *with* ECF 35-6. According to the Defendants, the Plaintiff never submitted these letters to the College until after she filed her EEOC complaint. Importantly, Dr. Campo expressly testified that he was not the author of either letter and emphasized that they were not in his medical records. *See* ECF 43-1 at 95–96 (testifying that August 5, 2005 note "was not generated from [his] office"), at 76–87 (testifying that he was "very confident" that the August 9, 2005 note "was not produced by [his] office," that the alterations on the note were "an obvious

5

distortion" and that it was "[i]mpossible" that these alterations came from someone in his office). In fact, he testified that the first time he ever saw the August 9, 2005 letter was when the Plaintiff personally delivered the note to him shortly before his deposition, asking him to include it in her medical file. Taken together, these facts present overwhelming evidence of the letters' falsity.

In an attempt to prove the veracity of the letters, the Plaintiff puts forward a litany of explanations. The Plaintiff's explanations are totally without evidence demonstrating their plausibility and, at best, amount to pure speculation.

Regarding the August 8, 2005 letter, the Plaintiff admits that the letterhead incorrectly identifies "700 Horseblock Road" as Dr. Campo's address at the time, and that Dr. Campo did not have an office there until 2010. In her defense, the Plaintiff points to excerpts from Dr. Campo's testimony where he concedes that the letter contains his signature and admits that it is possible that the letter was a typed copy of an August 9, 2005 handwritten note. The Plaintiff also makes much of the fact that Dr. Campo could not identify the document from which she could have lifted the signature to superimpose on the letter. Accordingly, the Plaintiff hypothesizes that Dr. Campo in fact wrote the note, and that the incorrect letterhead is merely an explainable clerical error by his office, not evidence of forgery on her part.

However, there is nothing before the Court that tends to show that these explanations are more than a mere "possibility." The Plaintiff cites no evidence corroborating her hypothesis, such as contemporaneous documents or testimony from Dr. Campo's assistants verifying that they wrote the letter. Most importantly, she has no explanation for the presence of an address on the letterhead which could not have appeared there until years after Dr. Campo supposedly faxed the letter to the Defendants. In her defense, she points to an October 20, 2010 letter stating: "the address 465 Blue Point Road . . . is accurate for the period of time in which the patient was treating in 2005" and that Dr. Campo's address "subsequently changed and is now 700 Horseblock Road . . ." ECF 40-30.

However, this document confirms, not contradicts, that 700 Horseblock Road could not have been the address on the letterhead at the time of the August 8, 2005 letter.

Turning to the August 9, 2005 letter, the Plaintiff asserts that "it remains in dispute, and for a jury to consider, precisely who created the" letter because "it is not self-evident" why the letter bears such a strong resemblance to Dr. Campo's November 19, 2004 note. The Plaintiff contends that it is "entirely possible" that the same person wrote both documents, and that the alterations to the August 9, 2005 letter are just an attempt to update the information in the November 19, 2004 letter. In support of this contention, the Plaintiff relies on Dr. Campo's testimony that the handwriting on the letter is "probably" that of a staff member, who would generally help him draft notes that he would sign off on. Again, the evidence relied on by the Plaintiff only suggests that this explanation is a hypothetical possibility. She provides nothing illustrating its supposed plausibility. The absence of such evidence is particularly noteworthy considering Dr. Campo's unequivocal testimony that the letter is a forgery.

Finally, the Plaintiff tries to supplement the supposed errors she's identified in the Defendants' accusations by pointing to the inadequacy of Dr. Campo's recordkeeping practices. These flaws are certainly probative and would be dispositive if the Defendants based their claim on the mere absence of the two notes at issue from Dr. Campo's medical records. However, the Defendants came forward with direct evidence of each letter's falsity and corroborated that evidence with the testimony of Dr. Campo, who denies writing the letters.

While the clear and convincing standard is certainly demanding, it does not require inexorable certainty. It is not enough for the Plaintiff to simply assert, without more, that "[t]here are many plausible explanations" for the discrepancies identified by the Defendants. Absent any evidence illustrating the plausibility of those explanations, the Court is confident that it possesses sufficient evidence to find that the Plaintiff forged Dr. Campo's notes. That being said, the Court somewhat agrees with the Plaintiff that the Defendants have not definitively ruled out the possibility of her

alternative theories. Specifically, given the changes in recordkeeping undertaken by Dr. Campo's office, it might be the case that he did indeed author these notes and just happened to forget. The Court doubts that this is actually the case. However, the Court believes that an evidentiary hearing in this regard would be prudent considering the gravity of the Defendants' accusations. *See Zimmerman v. Poly Prep Country Day Sch.*, No. 09-cv-4586, 2012 WL 2049493, at *35 (E.D.N.Y. June 6, 2012) (scheduling evidentiary hearing for determination regarding claim of fraud on the court "because credibility issues are critical to determination of the" motion) (collecting cases); *Shah v. Eclipsys Corp.*, No. 08-cv-2528, 2010 WL 2710618, at *15 (E.D.N.Y. July 7, 2010) ("Although an evidentiary hearing is not always necessary before finding a party has committed fraud on the court, many courts in this circuit and elsewhere have exercised their discretion to hold an evidentiary hearing before imposing sanctions on this basis.").

Therefore, the Court reserves decision on the motion for sanctions relating to the August 8, 2005 and August 9, 2005 letters pending an evidentiary hearing regarding their authenticity.

**B. AS TO WHETHER THE PLAINTIFF FABRICATED DR. DICANIO'S NOTES.**

The Plaintiff produced several notes from Dr. DiCanio, which the Defendants claim she fabricated and forged. These notes include three documents omitted from Dr. DiCanio's certified medical records, including: a September 2006 letter addressed to Bosco, ECF 35-9, who the Defendants claim could not have been the recipient of the letter because she did not become a supervisor until 2011; a September 2009 note containing an incorrect fax number on the letterhead, ECF 35-10; and a December 30, 2014 form containing numerous comments and writings not written by Dr. DiCanio, ECF 35-11. In addition, the Defendants take issue with another version of the December 30, 2014 form submitted to the general counsel of SCCC on August 10, 2015. ECF

35-12. Like Dr. Campo's notes, the Defendants claim the Plaintiff did not submit these documents until after she filed her EEOC complaint.

After reviewing Dr. DiCanio's notes, the Court deems it appropriate to conduct an evidentiary hearing on their authenticity. On the whole, the Court agrees with the Plaintiff that the record does not sufficiently establish by clear and convincing evidence that she forged these notes. If the Defendants' motion sought sanctions based on these documents alone, the Court would deny it. However, the Court has "inherent authority 'to conduct an independent investigation in order to determine whether it has been the victim of fraud.'" *Passlogix, Inc.*, 708 F.Supp.2d at 394 (quoting *Chambers v. NASCO*, Inc., 501 U.S. 32, 44, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991)). As the Court will explain, the Defendants put forward enough indicia of falsity to justify a deeper inquiry.

Regarding the September 2006 note, the Plaintiff responds that the absence of the document Dr. DiCanio's records is insufficient to establish falsity, because he occasionally signed off on notes written by other people, such as patients or medical assistants. However, Dr. DiCanio's general practice rebuts neither the Defendants' contention that Dr. DiCanio was not the Plaintiff's supervisor at the time nor the allegation that the College never received the note until after she filed it with the EEOC.

As for the September 2009 note, the Plaintiff contends that the presence of an incorrect fax number on the letterhead does not necessarily mean that she forged the letter. In support, the Plaintiff cites a number of other letterheads used by Dr. DiCanio's office, showing that the office occasionally changed its letterheads, and that these changes contained a number of inconsistencies and inaccuracies. Further, Dr. DiCanio testified that he recognized the note "as being from [his] office" and that it bore his signature. The Court agrees with the Plaintiff that a clerical error in the letterhead standing alone does not establish a forgery. On the other hand, the absence of the

9

document from Dr. DiCanio's certified records, and the lack of a coherent explanation for this omission, raises the Court's suspicion.

The Court also finds that the two versions of the December 30, 2014 form should be included in the evidentiary hearing. First, the Plaintiff produced a copy of the form, which was not in Dr. DiCanio's medical records, containing comments and writings by someone other than Dr. DiCanio. The Plaintiff provides no defense of the authenticity of this document, beyond merely stating that there's no proof she it to SCCC. However, if the Plaintiff forged the document, producing it during discovery may be sanctionable regardless of whether she sent the document to SCCC before she filed her claim. Second, the Defendants enclosed another version of the form in a letter to the general counsel of SCCC with different handwriting and without the marginal notes in the December 30, 2014 form. Not only does the existence of this document bolster the conclusion that the version with comments is forged, but the document also contains a signature page that is not in Dr. DiCanio's medical records and that Dr. DiCanio does not recognize.

Ultimately, the Defendants will need to provide additional support in order to establish that the Plaintiff forged Dr. DiCanio's notes by clear and convincing evidence. While the Defendants have cast some doubt on the authenticity of the documents, the flaws they identified are not so significant that the most probable explanation is forgery. Also, unlike the Dr. Campo letters, the evidence about those flaws is more equivocal. For instance, the fact that Bosco was not the Plaintiff's supervisor in 2006 does not preclude her from receiving letters from Dr. DiCanio in the same way that a letter bearing an address that did not exist at the time would imply that the letter was not indeed drafted on that date. Similarly, an incorrect fax number on a letterhead is more easily explained as a typographical error than handwritten alterations and white outs. Just because these flaws are less material, however, does not mean that the Defendants' are incorrect. In light

of the concerns raised by Dr. Campo's notes, and the omission of these documents from Dr. DiCanio's certified medical records, the Court finds it appropriate to include the Dr. DiCanio notes in the evidentiary hearing to confirm their authenticity.

Therefore, the Court reserves decision on the motion for sanctions relating to the September 2006 letter, the September 2009 note, and the December 30, 2014 forms pending an evidentiary hearing regarding their authenticity.

## C. AS TO WHETHER THE PLAINTIFF FALSELY TESTIFIED THAT SHE SUSTAINED HER INJURIES DURING A RIOT AT WORK.

In the Complaint and her deposition, the Plaintiff alleged that she was "brutally assaulted during a gang riot." ECF 1 ¶ 51; ECF 35-3 at 59–75. The Defendants contend that these allegations are knowingly false, first, because the only publicized riot at Wyandanch occurred while the Plaintiff was on worker's compensation leave, and, second, that the accident report for her injuries contradicts this allegation. Although, if true, the Defendants' arguments significantly diminish the Plaintiff's credibility, they do not rise to the level of establishing perjury by clear and convincing evidence.

As a preliminary matter, the parties agree that the Plaintiff sustained her injuries on November 4, 2004. The Complaint alleges that they occurred on December 6, 2004, ECF 1 ¶ 51, but the Plaintiff's testimony and the documentary evidence adduced during discovery show otherwise. ECF 35-3 at 59, 64; ECF 35-16; ECF 40-2; ECF 40-37. The Defendants provide no factual or legal basis for concluding that this mere discrepancy alone justifies levying sanctions. Often facts alleged in a complaint tend to be disproved or mistaken. Essentially, the Defendants are asking the Court to award sanctions because they believe the merits of their defense. However, resolving the Defendants' argument would require the Court to make a factual determination regarding a claim essential to the merits of the action, an issue for which a Rule 11 motion is an

inappropriate vehicle. *See Lorber v. Winston*, 993 F. Supp. 2d 250, 253 (E.D.N.Y. 2014) (Spatt, J.) (declining to award Rule 11 sanctions based on a claim that allegations in complaint were false because "in order to determine the moving Defendants' Rule 11 motion, the Court would be required to resolve whether or not the alleged fraud that Lorber accused the moving Defendants of participating in actually occurred"); *Safe–Strap Co., Inc. v. Koala Corp.*, 270 F.Supp.2d 407, 417 (S.D.N.Y. 2003) ( "In assessing whether Rule 11 sanctions should be imposed, the court does not judge the merits of an action.").

Next, the Defendants are incorrect in asserting that the evidence they rely on shows the Plaintiff perjured herself by testifying that she was brutally assaulted during a gang riot. First, the Defendants cite a New York Times article describing a brawl on December 6, 2004. ECF 35-17. The article is merely descriptive. The fact that a riot occurred on December 6, 2004 does not mean that another one could not have happened on November 4, 2004. Second, the accident report the Plaintiff submitted states: "[t]wo male students were fighting in the cafeteria and all other students rushed to see." ECF 35-16. While this document undercuts the Plaintiff's deposition testimony that hundreds of students were fighting each other, it is nonetheless possible that the fight between the two students occurred within the context of a larger fight. Lending some credence to the Plaintiff's theory, contemporaneous documents reference the Plaintiff's involvement in a "large fight," ECF 40-2, and a "fight between gang members," ECF 40-37. Further, the Plaintiff testified that the initial report describing a fight between two students was an attempt to downplay the severity of the gang involvement in her incident. The disputes over this evidence and the discrepancies identified by the Defendants go to the credibility of the Plaintiff, which should be decided by the jury.

Therefore, the Court finds that the Defendants failed to establish by clear and convincing evidence that the Plaintiff perjured herself about being the victim of a brutal assault during a gang riot.

### D. AS TO WHETHER THE PLAINTIFF FALSELY TESTIFIED ABOUT HER INVOLVEMENT IN COFFEY'S CRIMINAL DEFENSE.

The Plaintiff alleges that Bosco, the Assistant Chair of the Reading Department, offered Coffey, a student in one of the Plaintiff's classes, a passing grade in exchange for a promise to report the Plaintiff for making racially offensive remarks during class. ECF 1 ¶ 191; ECF 35-3 at 233–35. As part of their defense, the Defendants theorize that the Plaintiff aided Coffey in his defense of pending criminal charges in exchange for false testimony against Bosco. The Defendants claim that the Plaintiff perjured herself during her deposition by denying the extent of her involvement in Coffey's criminal defense efforts.

The Plaintiff's testimony regarding her participation in Coffey's criminal defense is undeniably false in several respects. The Plaintiff testified: (1) that Coffey never told her what he was charged with; (2) that she never saw the judge or went into the courtroom; (3) that she never spoke with Coffey's attorney; (4) that she did not know who Coffey's attorney was; and (5) that she never recommended an attorney to Coffey. ECF 35-3 at 244–48. However, her e-mails with Coffey show that she knew he was charged with possession of a firearm; told Coffey to use an attorney that represented her in another matter; got in fights with Coffey's attorney over her disagreement with his defense strategy; attended hearings; and contacted the judge and district attorney on Coffey's behalf. ECF 35-18. Coffey also testified that the Plaintiff went to court on his behalf and got into a fight with his attorney. ECF 35-14 at 32–35.

The Plaintiff responds that she understood the questions in the deposition to refer to whether she made an actual appearance in the proceedings on Coffey's behalf, and that she was confused about which attorney the examiner was asking about. Therefore, the Plaintiff contends that she lacked the intent to deceive necessary to commit perjury. Although the Court gives some credence to this explanation, it only resolves a portion of her false statements.

Nevertheless, the possibility that the Plaintiff may have misunderstood the questions makes the Court unwilling to find that she committed perjury. Further supporting this outcome, the challenged testimony has little to no direct bearing on the merits of the Plaintiff's claim. If the Plaintiff indeed lied about helping Coffey in his criminal defense, she would still be entitled to relief if she presented sufficient alternative evidence to support her claim. Her testimony in this regard is only relevant, because it pertains to the credibility of Coffey's testimony, namely that Bosco tried to get him to lie about the Plaintiff in retaliation for making requests for an accommodation. Raising any inconsistencies between her deposition testimony and the other evidence in the case before the jury would be a more proper vehicle for resolving this dispute, rather than an evidentiary hearing.

Therefore, the Court finds that the Defendants failed to establish by clear and convincing evidence that the Plaintiff perjured herself about her involvement in Coffey's criminal defense.

### E. AS TO WHETHER THE PLAINTIFF FALSELY TESTIFIED THAT SHE SUFFERED A MISCARRIAGE.

In the Complaint and her deposition, the Plaintiff claims that she suffered a miscarriage "in or around October 2006." As a result, she contends that Gerli required her to submit notes from mental health providers to prove she was fit for duty at the College. ECF 1 ¶¶ 66–77; ECF 35-3 at 160, 177–83. The Defendants deny that the Plaintiff ever became pregnant or had a miscarriage. They allege that the notes produced by the Plaintiff at discovery were actually obtained for the purpose of refuting allegations by her ex-husband, John Ringold, that she was mentally ill, in the context of their divorce proceedings. The Defendants base their theory on the testimony of Gerli and Ringold, as well as the Plaintiff's refusal to authorize the release of medical records documenting her miscarriage.

First, and foremost, the Plaintiff's refusal to authorize the release of her medical records should be addressed in a motion to compel, not a motion for sanctions. The Defendants' insistence that her refusal to turnover these documents amounts to evidence that she perjured herself is incorrect. As for the testimony, Ringold testified that he does not remember the Plaintiff being pregnant or having a miscarriage. ECF 35-15 at 14–15, 25–26. In addition, Gerli denied that she ever made the Plaintiff produce mental health notes and testified that the Plaintiff told her Ringold sought an annulment because he believed she had a miscarriage. ECF 40-5. Neither witness is competent to testify conclusively that the Plaintiff did not in fact suffer a miscarriage. While their testimony may circumstantially support that conclusion, the Plaintiff unsurprisingly testified to the contrary. Any contradiction between her testimony and that of Ringold and Gerli should be resolved by a jury.

In the Court's view, the Defendants' motion in this regard is frivolous at best and patently offensive at worst. Illustrating this point, the Plaintiff produced a medical report documenting her purported miscarriage. ECF 40-41. Rather than leaving matters be, the Defendants imply (without evidence) that the Plaintiff forged this document. In effect, the Defendants have accused the Plaintiff of moral turpitude, and when faced with a document supposedly disproving their accusation doubled down on those accusations. Considering that they have no basis for doing so, the Court cautions the Defendants that such behavior is wholly improper. Possibly recognizing the baseless nature of their accusations, the Defendants also contend that the Plaintiff's production of the document does not remedy her false deposition testimony, which supposedly impeded their ability to assess her claims. The Court notes that a motion to compel would have been a better vehicle for discovering the information necessary to assess her claims, rather than wasting the Court's time with this line of attack.

Therefore, the Court finds that the Defendants failed to establish by clear and convincing evidence that the Plaintiff perjured herself about her miscarriage.

## II. CONCLUSION

For the foregoing reasons, the Court refers the Defendants' motion for sanctions to United States Magistrate Judge Arlene R. Lindsay for an evidentiary hearing regarding the authenticity of Dr. Campo's August 8, 2005 and August 9, 2005 letters and Dr. DiCanio's September 2006 letter, September 2009 note and December 30, 2014 forms. The Court reserves decision on the Defendants' motion in these regards, including the fashioning of a remedy, pending the outcome of the evidentiary hearing. The Court denies the remainder of the Defendants' motion.

The Clerk of the Court is respectfully directed to terminate and immediately restore the Defendants' motion.

It is **SO ORDERED**:

Dated: Central Islip, New York

March 4, 2019

_____/s/ Arthur D. Spatt____

ARTHUR D. SPATT

United States District Judge